## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DANIEL BETANCOURT and
GARY T. SHUTE,

      Plaintiffs,

v.                              Case No: 8:13-cv-2759-T-30AEP

GREEN TREE SERVICING, LLC,

      Defendant.

_____

## ORDER

THIS CAUSE comes before the Court upon the Defendant's Motion to Stay Proceedings, All Discovery and Compel Arbitration (Dkt. #3) and Plaintiffs' Response in Opposition to the Motion (Dkt. #10). It is the Court's conclusion that the Motion should be granted to the extent that Gary T. Shute must submit his claims to arbitration.

### *Background*

Plaintiffs Daniel Betancourt and Gary T. Shute filed a complaint against Green Tree Servicing, LLC ("Green Tree") alleging causes of action for invasion of privacy and violations of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55, *et. seq*. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et. seq.*  The complaint refers to an "alleged debt" owed by Shute upon which Green Tree repeatedly called both Shute and Betancourt on their cellular phones using automated dialing systems and pre-recorded messages.  It also alleges that Green Tree released

Shute's debt information to Betancourt and others without his permission. Green Tree moves to compel both Shute and Betancourt to mandatory arbitration under the terms of the promissory note (the "Note") upon which Shute allegedly defaulted. Shute executed the Note in favor of Green Tree Financial Servicing Corporation (a separate entity from the Defendant) on May 17, 1999. Green Tree is the loan servicer for the Note.

*Discussion*

## I.    Legal Standard

It is well established that federal law strongly favors the arbitration of disputes and requires that federal courts rigorously enforce arbitration agreements. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *United States Fid. & Guar. Co. v. West Point Constr. Co., Inc.*, 837 F.2d 1507, 1508 (11th Cir. 1988) (noting "the strong policy favoring arbitration expressed by Congress in the Federal Arbitration Act"). "[A]rbitration is a matter of contract [and] the [Federal Arbitration Act's] strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." *Lawson v. Life of the S. Ins. Co*., 648 F.3d 1166, 1170 (11th Cir. 2011) (internal citations omitted). One exception to that rule is that a non-party, otherwise referred to as a non-signatory, may force arbitration "if the relevant state contract law allows him to enforce the agreement" to arbitrate. *Id*. (citing *Arthur Andersen, LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). "[T]raditional principles of state law may allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Id*.

An obligation to arbitrate is based on consent, and for this reason a non-signatory to a contract containing an arbitration agreement ordinarily cannot compel a signatory to submit to arbitration. *Marcus v. Florida Bagels, LLC*, 112 So. 3d 631, 633 (Fla. 4th DCA 2013). However, Florida law recognizes several exceptions to that general rule. Courts broadly construe arbitration provisions containing the language, "arising out of or relating to," which allow, in certain instances, the clause to include non-signatories. *Cuningham Hamilton Quiter, P.A. v. B.L. of Miami, Inc.*, 776 So. 2d 940 (Fla. 3d DCA 2000). Further, non-signatories can also compel signatories to arbitration based on the equitable estoppel doctrine. *Id.* at 942; *Marcus*, 112 So. 3d at 633. There are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration has been waived. *Cuningham Hamilton Quiter, P.A.*, 776 So. 2d at 942.

## II.    Green Tree's Motion for Arbitration

Green Tree argues that the Note provides a valid agreement to arbitrate. Plaintiffs do not contest the validity of the arbitration provision. They also do not argue that Green Tree wavied its right to arbitration. Their dispute is that no arbitrable issue exists since their claims are completely unrelated to the Note or the terms of the Note. Green Tree further argues that although it is a non-signatory to the Note, it is entitled to enforce the arbitration agreement. Its argument relies heavily on *Blinco v. Green Tree Servicing, LLC*, 400 F. 3d

1308 (11th Cir. 2005) and other Eleventh Circuit cases[1] that involved the question of whether a non-party can enforce an arbitration clause against a party. In *Lawson*, the Eleventh Circuit determined that those cases did not make it clear that the applicable state law provides the rule of decision for that question. 648 F.3d at 1171. Therefore, to the extent that those decisions indicate to the contrary, the Supreme Court decision in *Carlisle* overruled or at least undermined those decisions to the point of abrogation. *Id.* (*citing Carlisle*, 556 U.S. at 624).   Plaintiffs argue that Green Tree cannot enforce the arbitration agreement as a non-signatory under these facts. The only issues to decide are whether Green Tree as a non-signatory may enforce the arbitration provision and whether an arbitrable issue exists.

### III.    Non-Signatory May Compel Arbitration

Green Tree, as a non-signatory, may enforce the arbitration provision against a signatory. Florida courts broadly construe arbitration provisions containing the language, "arising out of or relating to," such that the clause may include non-signatories, in certain situations. *Cuningham Hamilton Quiter, P.A.,* 776 So. 2d at 942. *See also Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 211 (Fla. 3d DCA 2003) (reversing trial court's holding and finding that the language in the arbitration clause which contained the terms "arising out of or related to" was broad enough to include non-signatory to the arbitration agreement.)   "[I]n order for the dispute to be characterized as arising out of or related to

---

[1] *Lawson* also abrogated other cases relied on by Defendant including *MS Dealer Svcs. Corp. v. Franklin*, 177 F. 3d 942 (11th Cir. 1999) and *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F. 3d 753 (11th Cir. 1993).

the subject matter of the contract ... it must, at the very least, raise some issue the resolution of which requires a reference to or construction of some portion of the contract itself." *Id.*

The arbitration provision in the Note states as follows:

> All disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this contract, or the validity of this arbitration clause or the entire contract, shall be resolved by binding arbitration by one arbitrator selected by you with consent of us. This agreement is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law and all other laws, including but not limited to, all contract, tort and property disputes, will be subject to binding arbitration in accord with this contract. The parties agree that the arbitrator shall have all powers provided by the law, the Contract and the agreement of the parties. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief.

The arbitration provision is sufficiently broad to include Green Tree. Green Tree, as the servicer for the mortgage company, is engaged in several aspects of enforcing the note, and is in a relationship with Shute solely because of the Note. Therefore, the Court concludes that Shute's claims either arise from or relate to the Note or the relationships which result from the Note. Therefore, the Court concludes that Green Tree as a non-signatory may compel arbitration against Shute, a signatory, under the Note. Due to the

foregoing conclusion, the Court does not reach the issue of whether Green Tree may compel arbitration under the theory of equitable estoppel.

However, the exceptions to the general rule do not allow for Green Tree to compel Betancourt to arbitration. Green Tree has not pointed to any legal or factual basis why this exception, or the theory of equitable estoppel, should extend to a situation where a non-signatory moves to compel another non-signatory to arbitration. Therefore, Green Tree may not compel Betancourt to arbitration.

### IV.    Significant Relationship or Nexus to the Note

Although the Note contains a broad arbitration provision that allows a non-signatory to enforce it, "even in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause." *Careplus Health Plans, Inc. v. Interamerican Med. Ctr. Group, LLC*, 38 Fla. L. Weekly D2219 (Fla. 3d DCA 2013) (*citing Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 638 (Fla. 1999)). In order for an arbitrable issue to exist, there must be a significant relationship between the dispute and the contract containing the arbitration clause. *Id*.

The Florida Supreme Court explained that a "significant relationship" or "nexus" exists when "the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract. More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship." *Jackson v. Shakespeare Found., Inc*., 108 So. 3d 587, 593 (Fla. 2013) (internal citations omitted).

This case involves similar claims to those in *Ownings v. T-Mobile USA, Inc.*, 3:12-CV-1385-J-12, 2013 WL 4401824 (M.D. Fla. 2013), where the court held that Plaintiff's TCPA and FCCPA claims were significantly related to a cellular contract service agreement. In that case, the Plaintiff brought claims against his former cellular service provider for "willfully and knowingly placing non-emergency calls to Plaintiff's cellular telephone, using an artificial dialing system and/or an artificial or pre-recorded voice, without Plaintiff's prior express consent." The complaint further alleged that "telephone communications … occurred with such frequency as could reasonably have been expected to abuse or harass the Plaintiff."

When the Plaintiff terminated his cellular service contract early he owed a past due balance and was charged an early termination fee and late charges. The service agreement had an arbitration clause. The Court held that since the alleged TCPA and FCCPA violations were tied directly to the late fees and early termination charges set forth in the service agreement, the requisite significant relationship and nexus between Plaintiff's claim and the agreement to arbitrate existed. The *Ownings* court cited to *Jackson* in support of its holding.

The Court finds the holding in *Ownings* persuasive. The Plaintiffs' allegations are tied directly to Shute's alleged failure to pay on the Note and Green Tree's authority to collect on the Note.[2] The FCCPA provides prohibitions against debt collectors when

---

[2] This case is distinguishable from this Court's holding in *Harrier v. Verizon Wireless Pers. Communications LP*, 903 F. Supp. 2d 1281 (M.D. Fla. 2012) where the Court denied Defendant's motion to compel arbitration. In *Harrier*, the plaintiff obtained a discharge in bankruptcy for all consumer debts. Two years after the discharge, the Defendant started making

engaged in "collecting consumer debts." Fla. Stat. §559.72. Therefore, Shute's FCCPA claim must be tied to a consumer debt; namely the Note. Further, Shute's claims for invasion of privacy and violation of the TCPA also have a nexus to the Note, since all of the claims are tied to Green Tree's actions in attempting to collect on the Note. *See also Rhodall v. Verizon Wireless of E., L.P., CA* 1:10-3195-MBS, 2011 WL 4036418 (D.S.C. 2011) *reconsideration denied*, CA 1:10-3195-MBS, 2012 WL 1825259 (D.S.C. 2012) (finding disputes over collection of past due charges fall within the ambit of a similarly broad arbitration provision);   *Shea v. BBVA Compass Bancshares, Inc.*, 1:12-CV-23324-KMM, 2013 WL 869526 (S.D.Fla. 2013) (holding that Plaintiff's TCPA claim against bank based on unsolicited text message "clearly arises from the Parties' contractual relationship as embodied by the Agreements and relate to the Plaintiff's accounts with Defendant.") Therefore, the Court concludes that the Shute's claims have a significant relationship or nexus to the Note and should be submitted to arbitration.

### Conclusion

The Court concludes that Green Tree, as a non-signatory to the Note that contains an arbitration provision, may compel the Plaintiff Gary T. Shute to arbitration. Further, Shute's claims in the complaint are significantly related and have a nexus to the Note, and

---

collection calls on the discharged debt, and Plaintiff filed suit for violation of the FCCPA and TCPA. The Court stated that "Harrier is not attempting to take advantage of any agreement with Verizon. Indeed, the existence of an agreement with Verizon is not an element to any of Harrier's claims asserted in the instant action. The claims here are statutory and relate to Verizon's allegedly harassing conduct." *Id.* at 1282.  This Court ultimately held that compelling arbitration was inappropriate under the facts of the case, because "the plaintiffs' bankruptcy discharge rendered the parties' arbitration agreement unenforceable" and the debtor had not reaffirmed the debt. *Id.* at 1283.

therefore Shute must submit all of his claims to arbitration. Green Tree is unable to compel Betancourt to arbitration since it has no basis, as a non-signatory to the Note, to bind another non-signatory to arbitration.

It is therefore ORDERED AND ADJUDGED that:

1.    Defendant's Motion to Stay Proceedings, All Discovery and Compel Arbitration (Dkt. #3) is GRANTED to the extent that Gary T. Shute is compelled to submit Counts I, III, and V to arbitration.

2.    Counts I, III and V are hereby STAYED as to Gary T. Shute only.

3.    The parties are instructed to file a notice with this Court within fourteen (14) days of a final decision by the arbitration panel.

4.    Defendant is directed to file an Answer within fourteen (14) days of the date of this Order as to Plaintiff Daniel Betancourt.

5.    This action has been designated as a Track Two case (Dkt. #11).   The parties shall file a Case Management Report at the appropriate time.

**DONE** and **ORDERED** in Tampa, Florida, this 17th day of December, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2013\13-cv-2759 arbitration 3.docx